52  323
63  555

SALLIE C. KEYES *et Vir*, Respondents, v. THE BANK OF HARDIN, Appellant.

### Kansas City Court of Appeals, January 2, 1893.

1. **Instructions:** VERDICT: APPELLATE PRACTICE.  Instructions set out in the opinion are approved; there was evidence to support the verdict and the appellate court will abide the finding.

2. ———: ASSUMING FACT.  An instruction need not submit a fact to the jury when it is practically admitted.

3. **Banks and Banking:** COLLECTION: CONSIDERATION: CONVERSION. When a bank received a note for collection and wrongfully gave it over to another, whereby it was lost, the fact that plaintiff in an action for its conversion fails to allege and prove that it undertook the collection for a consideration, will not defeat a recovery.

4. ———: POWER TO COLLECT.  While corporations have only such powers as are expressly or impliedly given by their charters, yet the power to receive commercial paper for collection is necessarily implied from the character of the banking business.

*Appeal from the Ray Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

AFFIRMED.

THIS is an action commenced in the circuit court of Ray county, Missouri, on the fourth day of December, 1890, by Sallie C. Keyes and Thomas H. Keyes, her husband, against the Bank of Hardin, a corporation, to recover damages caused by the carelessness and negligence of defendant in delivering a certain promissory note to one James King, which plaintiffs had left with the bank, as plaintiffs allege, for collection; but, as defendant contends, in the nature of a special deposit, by reason of which the plaintiffs lost the amount due to them on the note.  It grows out of the following facts: Sallie C. Keyes, one of the plaintiffs,

owned a tract of land in Kansas. Some time in March, 1890, at Kansas City, Kansas, she sold or traded the land to one James King for three notes, and the one over which this controversy arises was one of them. This note was for $400, dated August 1, 1889, given by L. E. and E. L. Dorsey of Ray county, Missouri, and payable one day after date, to the order of James King. It was credited December 23, 1889, by $20. Under the terms of the contract between plaintiff, Sallie C. Keyes, and said King, the plaintiff was to have $350 of this note, and King was to have the balance. King did not have the note with him at the time the agreement was made, but subsequently, on the tenth day of March, 1890, he met Thomas H. Keyes at Morton, Ray county, Missouri, and there delivered the note to him as the agent of Sallie C. Keyes. Thomas H. Keyes went to Ray county for that purpose—was sent there by his wife to get the note, and was fully authorized by her to do whatever was necessary in the matter to obtain the note and arrange for its collection. After the note was delivered to Thomas H. Keyes, as agent for his wife, it was offered to George Keyes, the brother of Thomas Keyes, for collection, but he declined to take it, and told the parties to leave it with the Bank of Hardin for collection, as that was a part of the bank's business. On the next day King and Thomas H. Keyes went to the defendant bank at Hardin, and according to Keyes' testimony *he* gave the note to William Hughes, president of the bank. He further testifies that it was given *for collection*, and told him to figure it up, and it amounted to $398.96. Keyes also told Hughes he wanted him to send $350 of it to Sallie C. Keyes at Kansas City, Kansas, and the balance was to be paid to King. King said that was all right. The whole agreement between King and Mrs. Keyes was fully

explained to the bank officials at the time, and the cashier made a calculation as to the division of the amount due on the note according to the agreement between King and Keyes. The bank officials, at the time, made a written memorandum of the amount due on the note, showing that there was then due thereon the total of $398.96, and that of this they should pay over (when collected) $350 to Mrs. Keyes, and the remainder, $48.96, to King. Keyes' testimony is that this statement of the calculation was given by Mr. Hughes to King to show Dorsey in order that Dorsey might see the amount that was coming to King, but no receipt was given to King in the presence of Keyes, nor with his knowledge. The bank officials testified, however, that they gave a receipt to King because the note was payable to King. They also testified that King refused to indorse the note, and they refused to take it for collection unless it was indorsed, and that King refused to deliver the note until his part was paid—it had already been delivered by King to Keyes the day before. Keyes also denied that the bank refused to take the note for collection unless it was indorsed. Some days after the note was left there, King went to the bank and asked for the note and it was delivered to him by the bank, without any authority from plaintiffs and without their knowledge. King collected the full amount of the note from the makers and pocketed the proceeds. King is insolvent.

*T. N. Lavelock,* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action against the Bank of Hardin. Revised Statutes, 1889, secs. 2508, 2745; Bliss on Code Pleading [2 Ed.] secs. 268-9; Bishop on Contracts [Enlarged Ed.] sec. 40; *Dairy Co. v. Mooney,* 41 Mo.

App. 665; *Jemison v. Bank*, 19 Am. St. Rep. 483; *Hart v. Ins. Co.*, 21 Mo. 91. (2) An agreement not supported by a consideration is invalid. 2 Blackstone's Commentaries, 442; Bishop on Contracts [Enlarged Ed.] sec. 40; 5 Lawson on Rights & Remedies, sec. 2244. (3) In a suit to recover damages for the breach of a contract, which does not import a consideration, it is necessary to allege and prove the consideration. Bliss on Pleading [2 Ed.] sec. 268; 1 McQuillin's Practice, sec. 302; 1 Parsons on Contract [6 Ed.] side p. 449, note *z;* Bishop on Contracts [Enlarged Ed.] secs. 24, 40; Bishop on Contracts [Enlarged Ed.] secs. 77, 78; *Montgomery Co. v. Auchley*, 92 Mo. 129; *Wulze v. Schaefer*, 37 Mo. App. 553. (4) A banking corporation possesses only such powers as are expressly conferred or necessarily implied, and the enumeration of these powers excludes all others. Revised Statutes, 1889, secs. 2508, 2745; Lawson on Rights & Remedies, secs. 352, 373; Beach on Private Corporations, sec. 387; Morse on Banks & Banking, secs. 6, 56; Field on Corporations, sec. 54; *Weekler v. Bank*, 20 Am. Rep. 95; *Lyon v. Railroad*, 10 Am. St. Rep. 521; *Davis v. Railroad*, 41 Am. Rep. 221; *Railroad v. Seely*, 45 Mo. 212; *Dairy Co. v. Mooney*, 41 Mo. App. 671. (5) A corporation cannot be made to respond in damages for the breach of an executory contract made by its officers without authority of law. 2 Morse on Banks & Banking [3 Ed.] sec. 730; Beach on Private Corporations, sec. 426; *Dairy Co. v. Mooney, supra; Day v. Buggy Co.*, 21 Cent. L. J. 210; *Elevator Co. v. Railroad*, 4 Am. St. Rep. 798; *Jemison v. Bank*, 19 Am. St. Rep. 482; *Long v. Railroad*, 24 Am. St. Rep. 93. (6) Persons dealing with a corporation through its agents must take notice, *first*, of the extent of its corporate powers, and, *second*, of the scope of the agent's authority. 1 Beach on Private Corporations, secs. 383–4; *Davis v.*

*Railroad,* 41 Am. Rep. 223; *Elevator Co. v. Railroad,* 4 Am. St. Rep. 798; *Jemison v. Bank,* 19 Am. St. Rep. 484.

*Ball & Hamilton, B. F. Deatherage* and *O. G. Young,* for respondent.

(1) The petition states sufficient facts to constitute a cause of action. It was unnecessary for it to state the bank undertook to collect the note for a consideration. Morse on Banks & Banking [2 Ed.] p.385; *Ivory v. Bank,* 36 Mo. 475; *Gearhardt v. Savings Inst.,* 38 Mo. 60; *Smedes v. Bank,* 20 Johns. 372; *Bank v. McKinster,* 11 Wend. 475; *Bank v. Bank,* 6 Metc. 13; *Hall v. Bank,* 3 Rich. (S. C.) 366; *Titus v. Bank,* 6 Vroom (N. J.) 588; 2 American & English Encyclopedia of Law, p. 111, foot note 1. (2) Power to make collections upon business paper is incidental to the banking business, and need not be expressly conferred. 2 American & English Encyclopedia of Law, title, banks and banking, sub-head, collections, p. 111; *Tyson v. Bank,* 6. Blackf. (Ind.) 225; *Smedes v. Bank,* 20 Johns. (N. Y.) 372; *Jockusch v. Towsey,* 51 Tex. 129; *Fabens v. Bank,* 23 Pick. (Mass.) 330; Morse on Banks & Banking [2 Ed.] p. 384; *Ivory v. Bank,* 36 Mo. 475; *Gearhardt v. Savings Inst.,* 38 Mo. 60. (3) The bank, upon accepting the agency, is bound to exercise reasonable care and diligence in the discharge of its assumed duties. 2 American & English Encyclopedia of Law, note 2, p. 111; *Bank v. Bank,* 91 U. S. 92–104; *Fabens v. Bank, supra; Bank v. Bank,* 10 Cush. (Mass.) 582; *Bank v. Bank,* 36 Conn. 325: *Ivory v. Bank, supra; Gearhardt v. Savings Inst., supra; Bank v. Bank,* 44 Conn. 567; *Bank v. Bank,* 77 N. Y. 320; *Blanc v. Bank,* 28 La. Ann. 921; *Kincheloe v. Priest,* 89 Mo. 240. (4) There being evidence

to support the allegations of the petition and the verdict of the jury, this court will not interfere with the verdict of the jury, and will not pass upon the weight of the testimony. *Shockley v. Fisher,* 21 Mo. App. 551; *Schluter v. Weidenbroker,* 23 Mo. App. 440; *Swayze v. Bride,* 34 Mo. App. 414; *Ewing v. Phillips,* 35 Mo. App. 144; *Hamilton v. Boggess,* 63 Mo. 223; *Gaines v. Fender,* 82 Mo. 509; *Caruth v. Richeson,* 96 Mo. 186.

GILL, J.—From the foregoing statement it will be noticed that the controversy on the *facts* is about this: Plaintiff claims that her husband, acting for her, left the Dorsey note with the bank for collection, and with the understanding that when collected the $350 should be paid over to her, and the $48 to be paid to King. While defendant contends, that the note was received (as a kind of special deposit) from *King,* and not from the plaintiff, and that King all the time controlled the paper, and, hence, a surrender thereof to him was entirely proper.

On these two theories of fact the trial court, of its own motion, instructed the jury as follows: "1. If the jury believe from the evidence that Sallie C. Keyes, by Thomas H. Keyes, her husband, deposited in the Bank of Hardin the note for $400 read in evidence, executed by L. E. Dorsey and Ed. Dorsey, and payable to the order of James King, and that said bank agreed with said Thomas H. Keyes, as agent for said Sallie C. Keyes, to collect said note and pay plaintiff the sum of $350 and the remainder to James King, and believe that said bank afterwards turned over said note, without authority from plaintiff, to said James King, who collected the same, and that the sum of $350 was thereby lost to plaintiff, then the jury will find for the plaintiff in the sum of $350.

"2.. But if the jury find from the evidence that James King had an interest in said note, and that he refused to indorse said note to plaintiff and to relinquish his control of the note until the amount coming to him out of said note was paid, and that James King turned said note over to said Bank of Hardin, and took a receipt therefor in his own name under an arrangement by which, if the money due on the note was paid into the bank, the sum of $350 was to be held by the bank for plaintiff, then the said King had a right to withdraw said note from the bank, and, if he did so before it was paid, the jury will find for the defendant."

The jury under these instructions rendered a verdict for the plaintiffs.

Unless, now, it shall otherwise appear from some technical objections urged by defendant's counsel (and which we shall hereafter notice), it becomes our plain duty to affirm this judgment. The foregoing instructions presented to the jury in a clear and concise manner the two sides of the case on its merits. There was substantial evidence to support the respective claims of both plaintiff and defendant; and, hence, we must abide the finding of the jury, and declare with the verdict the case to be that as detailed in plaintiffs' evidence, to-wit: That plaintiffs, holding the note in question, placed the same with defendant for collection, and that defendant without authority of the plaintiffs gave the note over to King, and that thereby the interest of the plaintiffs therein (to-wit, $350) was lost to them.

Defendant's counsel suggests that the court's first instruction was erroneous, in that it did not submit to the jury whether or not Mrs. Keyes, the plaintiff, was the owner of the note she deposited with defendant for collection. That was unnecessary since plaintiffs'

interest was practically admitted. That Mrs. Keyes had an interest to the extent of $350 in the proceeds of the Dorsey note, was undisputed and undoubted under the evidence, and the court, therefore, was fully justified in assuming that fact.

It is further contended with some show of sincerity that before plaintiffs could recover they should have alleged and shown that defendant undertook the custody and collection of the note for a *consideration*. In answer to this position, it is only necessary to say, that, in so far as concerns this particular controversy, it is wholly immaterial whether defendant was to hold the note and make the collection with or without compensation. This is not a suit for a failure to collect as agreed, but is an action for conversion. The defendant had the custody of a valuable security belonging to the plaintiff, and it was wrongfully given over to another by reason whereof the plaintiff lost her interest therein. Whether defendant was holding the same as a bailee for reward or as a gratuity, its liability for plaintiffs' loss was the same under the facts and circumstances as found by the jury. A gratuitous bailee is liable for such a degree of negligence as was this; and this too whether it was a general or special deposit. 1 Morse on Banking [3 Ed.] secs. 194–196.

Further objection is made that the defendant banking corporation had no power or authority to receive the note for collection, and, hence, is not bound in this action. This contention, too, is without merit. Admitting the rule to be as claimed by counsel, that corporations have only such powers as are expressly or impliedly given by their charters or acts of incorporation, and yet there can be no doubt as to the necessary authority in this bank to receive and collect commercial paper for its patrons. It is not so named nor denied in its charter, but is necessarily

implied from the character of its business. The defendant was organized to, and was in the conduct of, a general banking business; and within the limits of that business the receiving on deposit and for collecting commercial paper is by the common understanding part and parcel of such business. "In addition to the powers given in the charter, all powers necessary for the carrying out of those express powers are impliedly given, and the courts are liberal in construing charters so as to include them." Lawson on Rights & Remedies, sec. 374; 2 Beach on Private Corporations, sec. 385. "Power to make collections upon business paper is incidental to the banking business, and need not be expressly conferred." 2 American & English Encyclopedia of Law, p. 111, and cases cited.

Upon a thorough review of every point made, we discover no reason for disturbing this judgment, and it is, therefore, affirmed. All concur.