ROBERT MILLER, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 16, 1894.

1. **Practice Appellate:** COMMON ERROR IN INSTRUCTIONS. An appellant cannot complain of error in the instructions given for the respondent, which is brought about by similar errors in his own.

2. **Railroad:** OBLIGATION TO MAINTAIN OPENINGS AND GATES IN FENCES AT FARM CROSSINGS: LAW AND FACT. The obligation of a railway company to maintain openings and gates in its fences exists under section 2611 of the Revised Statutes not at all farm crossings, but only at those which are necessary. Whether a crossing is necessary for the purposes of the statute is a mixed question of law and fact.

3. ———: ———. And *held* by Bond, J., that, when a railway company has failed to construct gates and openings in the manner prescribed by statute, it cannot invoke as a defense to an action based thereon its ignorance of, and the absence of a reasonable time for the discovery of, the condition of the same.

*Appeal from the Knox Circuit Court.*—HON. BEN E. TURNER, Judge.

AFFIRMED.

*G. R. Balthrope* for appellant.

*John W. Ennis* and *Charles D. Stewart* for respondent.

BOND, J.—This suit was begun before a justice in Knox county, Missouri, under section 2611 of the Revised Statutes of 1889, to recover for four steers killed by the engine and cars of the defendant at a place on defendant's railroad where defendant had failed to erect and maintain lawful fences and gates, and where it had failed to construct and maintain cattle guards sufficient to prevent animals from getting on the railroad, as required by law. There was a trial before the justice and also in the circuit court, where plaintiff had judgment from which defendant prosecutes this appeal, assigning as error the giving and refusal of instructions and the rulings of the court in the admission and exclusion of testimony.

The section of the statute, upon which this action is based, requires every railroad corporation in this state to "erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands, with opening and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut, at all necessary farm crossings of the road, for the use of the proprietors or owners of the land *adjoining* such railroad, and also to construct and maintain cattle guards, where fences are required, sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad."

Any corporation failing to comply with the foregoing provision of the statute is liable for double the amount of the damages caused by such nonobservance. Revised Statutes, 1889, section 2611.

The evidence tended to show that the respondent

rented a pasture lot adjoining appellant's roadway, on the north side, in Liberty township, Knox county; that there was a gate in the line of fence separating said pasture from the railroad track, which opened into a crossing leading over the roadbed into a gate on the south side of the railroad opening into the farm of Mr. Hudson; that respondent kept some twenty head of cattle in the pasture rented by him; that, about the twenty-third of July, 1893, the cattle escaped through the gate and got on the roadway of the railroad company, and four of them were killed by collision with one of its engines; that, before and at the time of the accident, the gate through which the cattle went upon the railroad track had no such fastenings as were required by the statute, but was blown open north or south according to the veering of the wind; that one of its posts had sprung away so that the gate would not fasten; that at some of the times when it was observed to be fastened, it was secured by hooking a chain which ran around the side of the gate to a staple on the post that had sprung apart; that at other times it was observed to be fastened with a prop only; that at other times it was observed to be fastened with a common padlock; that the crossing between the two gates was made by consent of the railroad company upon the solicitation of the adjoining owner on the side of the track opposite from that on which plaintiffs' pasture lay; that the defective condition of the gate and its fastenings had existed, and was known to appellant, for several months before the killing of respondent's cattle; and that during this time the gate had been observed open and unsecured by persons using the crossings.

There was also evidence tending to show that the employees of appellant found the gate open on Friday and Saturday before the killing of the stock on the

following Sunday, and that they fastened it with a chain and bolt.

For the plaintiff the court gave, among others, the following instructions:

"1. If the jury believe from the evidence that defendant's railroad kept and maintained the gate at the crossing in question, then in such case defendant is estopped from denying that the crossing was a necessary farm crossing.

"2. The court instructs the jury that at farm crossings the law requires the railroad company to erect and maintain gates, to be hung and have latches or hooks so that they may be easily opened and shut. Therefore, if the jury find from the evidence that this was a farm crossing across defendant's road, and that defendant had negligently failed to erect and maintain a gate that was properly hung and fastened with latches or hook, and that, by reason of such neglect of defendant to keep and maintain such gate, the gate became open, and plaintiff's stock strayed upon defendant's road and were killed by defendant's engine and cars while operated and run by defendant's agents, servants and employees, then they should find for plaintiff."

For the defendant the court gave, among others, the following instructions:

"1. The court instructs the jury that, in arriving at their verdict, the jury is not to consider any evidence introduced in the cause in reference to the fence in controversy, except the gate.

"2. If the evidence shows that the defendant maintained a gate with proper and secure fastening, that is, such fastening as a diligent and prudent man would have maintained in reference to his own affairs, then in such case the verdict should be for defendant.

"3. The court instructs the jury that, if the jury

believe from the evidence in the cause that some person, on the evening or night just prior to the killing of plaintiff's cattle, opened the gate and left it open without the knowledge or consent of defendant, and, by reason of said gate being so opened, plaintiff's cattle strayed out and upon defendant's right of way and were killed by its locomotive, they will find for defendant.''

We fail to see that the court committed any reversible error in the instructions, *supra*, given for the respondent. The first instruction embodied the proposition that, if appellant made a farm crossing and maintained a gate in respondent's fence for the use of said crossing, then it would be appellant's duty to comply with the statute regulating gates at necessary farm crossings. In other words, if the hypothesis contained in the instruction is true, appellant thereby *assumed* the duty cast upon it by the statute in question, and became obligated to respondent, as an adjoining proprietor who had accepted the *status* created by appellant, to protect him from injury by a compliance with the law enacted for his protection.

Nor do we see any valid objection to the second instruction, *supra*, given for respondent. It simply defined the duties of the appellant under the statute on which this action is based, and submitted to the jury the finding of the facts necessary to its application. Moreover, the converse theory of the case was presented by the court in its instructions for defendant, *supra*, covering all the defenses which justly arose under the evidence.

Nor was there any error on the part of the court in refusing appellant's instruction to the effect that railway companies are only required to make farm crossings where the farms of the same proprietors are divided by its right of way. Such a limitation cannot

be gathered from the letter or spirit of the statute under consideration.

The terms of the statute are, to erect and maintain lawful fences, etc., *"with openings and gates therein,* etc., at all necessary farm crossings of the road for the use of the proprietors or owners of the land *adjoining* such railroad."* This language excludes the idea embraced in the refused instruction.

The right to recover for such injuries is subject to no such restriction as that stated in respondent's refused instruction. Nor can a railroad company which has failed to construct such gates and openings according to the statute invoke the defense of want of knowledge of their being out of repair, or want of reasonable time to discover their condition. *Morrison v. Railroad,* 27 Mo. App. 418; *Duncan v. Railroad,* 91 Mo. 67; *Woods v. Railroad,* 51 Mo. App. 500; *West v. Railroad,* 26 Mo. App. 344.

Finding no error in the record, the judgment of the lower court is affirmed. Judges ROMBAUER and BIGGS concur in the result.

SEPARATE OPINION.

ROMBAUER, P. J.—Judge BIGGS and I are of the opinion that the judgment in this case should be affirmed on the ground that the plaintiff and defendant alike requested the court, in instructions asked by them respectively, to submit to the jury the *sufficiency of the gate* in question. Both sides seem to have claimed that the controversy was one touching the sufficiency of the gate, and not touching the question whether the defendant was bound to maintain a crossing, nor touching the question whether the gate was permanently fastened and thus became part of a closed fence. Such being the case, we are of opinion that the plaintiff's

first instruction, which is indefinite, and the plaintiff's second instruction, which is erroneous, furnish no ground for reversing the judgment. The defendant cannot complain of error in the plaintiff's instructions, which is brought about by similar errors in his own. For the same reason the defendant's third instruction, should not have been given, as there was no evidence in the case that the gate was a compliance with the statutory requirements of a gate. *Duncan v. Railroad,* 91 Mo. 67.

We desire, however, that there should be no misunderstanding as to views of this court touching the meaning of the statute in question. The statute requires every railroad company in this state to erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields, or uninclosed lands, with opening and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut at *all necessary farm crossings* of the road for the use of the proprietors or owners of the land adjoining such railroad. In most other states the conditions, under which the right accrues on the part of an adjoining owner to have a farm crossing constructed by the railroad company, are prescribed in detail. In this state, however, the only limitation is the necessity of such a crossing. It must be evident that such *necessity* is a *mixed* question of law and fact, and cannot be determined arbitrarily either by the plaintiff or by the railroad company or by the jury. It is, therefore, error to submit the question to the jury without any guide, whether such farm crossing was necessary or not. Where the railroad company is bound by contract to maintain a crossing, or where its railroad divides a farm so as to preclude as convenient an access to the several parts thereof as would be furnished by a cross-

ing, or where its railroad cuts in two a way of necessity, or the easement of a private way existing anterior to its construction, the *necessity* mentioned in the statute unquestionably arises, and if a crossing can conveniently be constructed the railroad company is under an obligation to do so. The statute of the state of Illinois on that point is similar to ours in using the word *necessary*. It there received the construction which we give to it here. *Chalcraft v. Railroad*, 113 Ill. 86.

In these views Judge BIGGS concurs.